**DEREK SMITH LAW GROUP, PLLC**
Susan Keesler, Esq.
Attorney ID No. 010382012
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
susan@dereksmithlaw.com
*Attorneys for Plaintiff, Nathan Iverson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATHAN IVERSON,<br><br>        Plaintiff,<br><br>   *v.*<br><br>KANIA REAL ESTATE HOLDINGS, LLC, *individually and d/b/a* COMFORT INN AT TOMS RIVER;<br>STEPHANIE CONWAY*, individually and in her official capacity; and*<br>PATRICIA BRECKA, *individually and in her official capacity*,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT** FOR DECLARATORY JUDGMENT *and* DAMAGES<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

1. This is an action for relief from violations of the American With Disabilities Act, as amended, 42 U.S. Code §§ 12101 et seq. ("ADAAA"), the New Jersey Law Against Discrimination, N.J.S.A. §§10:5-1 *et seq.* ("NJLAD"), and the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301 *et. seq.* ("USERRA").

2. Plaintiff Nathan Iverson seeks declaratory and injunctive relief, actual damages, compensatory damages, reinstatement, liquidated damages, punitive damages, pre- and

post-judgment interest, reasonable attorneys' fees and costs of suit to redress the injuries he has suffered as a result of being discriminated against by his employer based on his disability, sex, sexual orientation, veteran status, and participation in protected activity, and being retaliated against for his opposition to unlawful conduct and participation in protected activity.

## **PARTIES**

3. Plaintiff Nathan Iverson ("Plaintiff") is an individual adult male who is a resident of the State of New Jersey.

4. At all times material, Defendant Kania Real Estate Holdings, LLC is a domestic limited liability company duly existing by the virtues and laws of the state of New Jersey with a principal place of business located at 2215 Route 37 East, Toms River, NJ 08753.

5. At all times material, Defendant Kania Real Estate Holdings, LLC did and continues to do business as "Comfort Inn at Toms River" (hereinafter referred to as Defendant Comfort Inn), a fictitious business entity with a principal place of business located at 2215 Route 37 East, Toms River, NJ 08753.

6. At all times material, Defendant Patricia Brecka ("Brecka") was and is an individual female believed to reside in the State of New Jersey.

7. At all times material, Defendant Brecka was and is employed by Defendant Comfort Inn as General Manager.

8. At all times material, Defendant Brecka held supervisory authority over Plaintiff and Defendant Stephanie Conway in regard to their employment.

9. At all times material, Defendant Brecka had hiring and firing authority over Plaintiff.

10. At all times material, Defendant Brecka had authority to affect the terms and conditions of Plaintiff's employment.

11. At all times material, Defendant Stephanie Conway ("Conway") was and is an individual female believed to reside in the State of New Jersey.

12. At all times material, Defendant Conway was and is employed by Defendant Comfort Inn as Front Office Manager.

13. At all times material, Defendant Conway held supervisory authority over Plaintiff in regard to his employment.

14. At all times material, Defendant Conway had hiring and firing authority over Plaintiff.

15. At all times material, Defendant Conway had authority to affect the terms and conditions of Plaintiff's employment.

16. Defendant Comfort Inn, Defendant Brecka, and Defendant Conway are herein collectively referred to as "Defendants."

17. Defendants were "employers" and Plaintiff was an "employee" within the meaning of the applicable law.

18. Defendants accepted, agreed, adopted, acquiesced, and/or otherwise was bound by the actions, omissions, and conduct of its owners, managers, supervisors, employees, and agents.

19. Defendants are being sued in their individual and official capacities.

20. Defendants systematically and willfully violated workers' rights under ADAAA, NJLAD and USERRA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. Around July 6, 2020, Plaintiff, without assistance of counsel, timely filed a charge of retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") and the New Jersey Division on Civil Rights (NJDCR), alleging discrimination based on his disability.

22. Plaintiff requested on both his Charge of Discrimination Cover Sheet as well as in the body of the email submission of the Charge, that his Charge be simultaneously filed with the NJDCR.

23. The continuing acts of employment discrimination referenced in Plaintiff's Charge of discrimination were committed by: (1) Defendant Comfort Inn (2) Defendant Patricia Brecka; and (3) Defendant Stephanie Conway.

24. Around April 6, 2021, the EEOC issued Plaintiff a Notice of Right to Sue Within 90 Days.

25. This action is being commenced within ninety (90) days of Plaintiff receiving the Notice of Right to Sue.

## JURISDICTION AND VENUE

26. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions under federal law under the ADAAA.

27. The Court has supplemental jurisdiction over Plaintiff's state causes of actions pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiff's ADAAA claims.

28. Venue in this judicial district is proper pursuant to 28 U.S.C §1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's

claims occurred in the District of New Jersey and Defendants are subject to personal jurisdiction here.

## MATERIAL FACTS

29. Around January 2020, Plaintiff began employment with Defendant Comfort Inn as a Front Desk Person.

30. Plaintiff's responsibilities included attending to hotel guests' needs, setting up coffee and breakfast, maintaining the front office, and maintaining general hotel security. Plaintiff was also responsible for running the night audit system.

31. Plaintiff was qualified for his position.

32. From the beginning of his employment, Plaintiff utilized a service animal (dog) while working for Defendants because Plaintiff has Post-Traumatic Stress Disorder (PTSD) and Major Depressive Disorder (MDD) related to his service for the United States Army.

33. At all times, Defendants were aware of Plaintiff's gender, his sexual orientation as a gay male, his veteran status, and his disability, and observed Plaintiff utilizing his service animal on a daily basis.

34. Plaintiff suffers from the following symptoms of PTSD from time to time: isolation behavior, severe depression, night terrors, flashbacks, suicidal thoughts and tendencies, mild to severe chronic anxiety.

35. Plaintiff suffers from the following symptoms of MDD from time to time: severe depression, recurrent thoughts of death, suicidal ideation, and difficulty in concentrating.

36. Plaintiff's PTSD and MDD substantially limit and/or impair his ability to breathe, eat, sleep, concentrate, communicate, work/and or engage in other related daily activities, but

Plaintiff can perform the essential functions of his position with or without a reasonable accommodation.

37. Plaintiff's service animal ameliorates or prevents Plaintiff's symptoms of PTSD and MDD.

38. At all times, Plaintiff's service animal wore a vest marked "SERVICE DOG" a well as a harness.

39. Plaintiff had never previously been disciplined or written up for his performance by Defendants.

40. Beginning around April 2020, Plaintiff was subjected to discriminatory comments and conduct by his immediate supervisor, Defendant Conway.

41. By means of example, when Plaintiff came into the front office with his service animal to check on his time punch, Defendant Conway stated, "**So you're going to bring the dog back in like an asshole**."

42. On another occasion, Defendant Conway told Plaintiff, "**Fuck you**" in response to Plaintiff informing her that he must have his service dog with him.

43. On another occasion, Defendant Conway stated that Plaintiff did not have a "right" to have a service dog at all because the service animal was not with Plaintiff during the service animal's separation anxiety training.

44. An employee of Defendants, Ms. Tzakos, who worked as a front desk person as well, witnessed Defendant Conway state on more than one occasion, "**I don't think it's a real service dog,**" referring to Plaintiff's service animal.

45. On another occasion, when Plaintiff attempted to open the office door to check his time punch, Defendant Conway braced herself against the door, preventing Plaintiff from

entering the office, stating that if Plaintiff wanted access to the front office, he would have to put his service dog out in the car.

46. No such policy requiring Plaintiff to place his service dog out in the car when entering the office existed.

47. By means of another example, around April 10, 2020, upon Defendant Conway relieving Plaintiff from his shift, Defendant Conway told Plaintiff she would not come into the office unless his service dog was outside.

48. Defendant Conway further told Plaintiff that Defendant Brecka informed her that Plaintiff's service dog had to leave the building 15 minutes early for those uncomfortable with his dog.

49. Plaintiff was never informed of the above by Defendant Brecka.

50. Plaintiff needs his service dog in his presence to reduce or prevent his symptoms of PTSD and MDD.

51. Defendant Conway's statements were unwelcomed by Plaintiff and discriminated against Plaintiff on the basis of his disability and use of service animal.

52. As a result, around April 18, 2020, Plaintiff made a complaint of harassment against Defendant Conway to his other supervisor, Defendant Brecka.

53. Defendant Brecka responded in sum and substance, "The simple answer is don't come in once you have left, just leave me a message to fill in your punch for the day."

54. Defendant Brecka further stated, "**This is creating more problems than it's worth,**" referring to Plaintiff's service animal.

55. Defendant Brecka's comments were unwelcomed by Plaintiff and discriminated against Plaintiff on the basis of his disability.

56. Defendant Brecka failed to investigate Plaintiff's complaint against Defendant Conway and failed to take any corrective or remedial action, thereby enabling continued harassment by Defendant Conway.

57. By means of example, Defendant Conway would glare at Plaintiff in a negative manner and treat him with discriminatory animus, making Plaintiff extremely uncomfortable.

58. Further, Ms. Tzakos observed Defendant Conway posting a copy of Plaintiff's complaint on the corkboard in the office for everyone to see and stated, "**Look at this shit, look at this shit.**"

59. This conduct would deter any reasonable person from submitting a complaint of harassment, discrimination or retaliation, i.e. exercising protected activity, to Defendants.

60. Defendant Brecka failed to do anything to correct Defendant Conway's conduct above.

61. Additionally, Ms. Tzakos observed Defendant Brecka and Defendant Conway make discriminatory comments regarding Plaintiff's sex, sexual orientation and veteran status.

62. By means of example, Ms. Tzakos witnessed Defendant Brecka and Defendant Conway state that they "**do not like men in the workplace**" and that "**Men are sloppy**" and they "**do not like to hire men because men never work out behind the desk**."

63. Ms. Tzakos also witnessed Defendant Brecka and Defendant Conway talk about Plaintiff's background, including how he "**was in the military**" and how "**something bad happened to him**," and that "**He is weird**." Defendant Brecka and Defendant Conway then stated, "**So we'll see how he works out**," referring to Plaintiff.

64. Ms. Tzakos further witnessed Defendant Brecka and Defendant Conway state, "**You can definitely tell that Nathan is gay**," referring to Plaintiff's sexual orientation.

65. As a result of Defendants' conduct, Plaintiff was extremely distressed at work and his working conditions became so intolerable that he had no other choice but to resign around April 29, 2020.

66. Plaintiff suffered a hostile work environment because Defendants subjected Plaintiff to unwanted and severe discriminatory comments about his disability, sex, sexual orientation, and veteran status on a frequent basis.

67. As a result of Defendants' conduct, Plaintiff felt extremely humiliated, degraded, embarrassed, victimized and emotionally dressed.

68. As a result of Defendants' conduct, Plaintiff suffers from: increased frequency of depressive episodes, weight gain, increased isolation, increased panic attacks, chronic sleep impairment, increased night terror episodes, requiring medication and treatment. In addition, shortly after Plaintiff was constructively discharged, he suffered an emergency hospitalization resulting from a severe depressive episode related to his working conditions.

69. As a result of the acts and conduct complained herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

70. Plaintiff claims that Defendants discriminated against and constructively discharged Plaintiff because of his disability, sex, sexual orientation, and veteran status, and because he complained or opposed the unlawful conduct of Defendants.

71. Plaintiff claims constructive discharge and also seeks reinstatement.

72. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

73. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition, including his PTSD and MDD.

74. Defendants have established a pattern and practice of not only discrimination but also retaliation.

75. The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

76. Where Defendants' acts were conducted with malice or with reckless disregard for Plaintiff's rights, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from all Defendants jointly and severally.

## CAUSES OF ACTION

### COUNT I
### ADAAA – DISCRIMINATION
### 42 U.S.C. §§ 12101 et seq.
**(Not Against Individual Defendants)**

77. Plaintiff Nathan Iverson repeats and realleges every allegation made in the above paragraphs of this complaint.

78. Title 42 of the ADAAA, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

79. Under the McDonnell Douglas burden-shifting analysis, Plaintiff must establish a prima facie case for discrimination, namely that he (1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006).

80. In the amended Act, after concluding that courts had construed the term "disability" too narrowly, Congress stated that it intended to liberalize the ADAAA "in favor of broad coverage." 42 U.S.C. § 12102(4)(A). See Summers v. Altarum Institute Corporation, 740 F.3d 325 (4th Cir. 2014). Congress also mandated that the ADAAA, as amended, be interpreted as broadly as its text permits. Id.

81. The ADAAA defines persons with disabilities as individuals who have 1) a physical or mental impairment that substantially limits one or more of the major life activities; 2) a record of such an impairment; or 3) been regarded as having such an impairment. See 42 U.S.C. § 12102(1).

82. Here, Plaintiff is a qualified individual with a disability because he has a "physical or mental impairment that substantially limits one or more major life activities of such individual" (here, PTSD and MDD), and/or he is "regarded as having such an impairment" by his use of a service animal. 42 U.S.C. §12102.

83. Specifically, Plaintiff's PTSD and MDD substantially limits and/or impairs his ability to breathe, eat, sleep, concentrate, communicate, work/and or engage in other related daily

activities, but Plaintiff can perform the essential functions of his position with or without a reasonable accommodation.

84. Plaintiff suffered an adverse employment action, here, constructive discharge, under circumstances giving rise to an inference of discrimination where Defendants subjected him to a pattern of discriminatory behavior based on his disability that made his working conditions intolerable.

85. Plaintiff's disability was a motivating factor in Defendants' decision to discriminate against Plaintiff and treat him in an unlawful manner.

86. Because of Defendants' violation of the ADAAA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to his business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### COUNT II
### ADAAA – HOSTILE WORK ENVIRONMENT
### 42 U.S.C. §§ 12101 et seq.
### (Not Against Individual Defendants)

87. Plaintiff Nathan Iverson repeats and realleges every allegation made in the above paragraphs of this complaint.

88. A claim for harassment based on disability requires a showing that: 1) plaintiff is a qualified individual with a disability; 2) he was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that the employer knew or should have known of the harassment and failed to take prompt effective remedial action. See Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 667 (3d Cir. 1999).

89. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

90. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

91. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

92. Here, Plaintiff is a qualified individual with a disability because he has a "physical or mental impairment that substantially limits one or more major life activities of such individual" (here, PTSD and MDD), and/or he is "regarded as having such an impairment" by his use of a service animal.  42 U.S.C. §12102.

93. Plaintiff was subject to unwelcomed harassment by his supervisors, Defendant Brecka and Defendant Conway, and their harassment was based on his disability and his use/need for a service animal.

94. The harassment was sufficiently severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

95. Defendants had the authority to control Plaintiff's work environment, and they abused that authority and failed to act, creating a hostile work environment.

96. Defendants' harassing conduct filled the environment of Plaintiff's work area.

97. Defendants knew that the harassing conduct filled Plaintiff's work environment.

98. Defendants' harassing conduct occurred on a frequent basis.

99. Defendants' harassing conduct caused Plaintiff to sustain severe emotional distress, including increased frequency of depressive episodes, weight gain, increased isolation, increased panic attacks, chronic sleep impairment, increased night terror episodes, requiring medication and treatment. In addition, shortly after Plaintiff was constructively discharged, he suffered an emergency hospitalization resulting from a severe depressive episode related to his working conditions.

100. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted, and objectively opposed the conduct.

101. Defendants' conduct was both severe and pervasive.

102. The conduct was emotionally damaging and humiliating.

103. The conduct unreasonably interfered with Plaintiff's work performance.

104. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

105. Defendants provided a futile avenue for complaint.

106. Defendants retaliated against Plaintiff for her complaints.

107.     Defendants acted upon a continuing course of conduct.

108.     Because of Defendants' violation of the ADAAA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to his business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### COUNT III
### ADAAA – FAILURE TO ACCOMMODATE
### 42 U.S.C. §§ 12101 et seq.
### (Not Against Individual Defendants)

109.     Plaintiff Nathan Iverson repeats and realleges every allegation made in the above paragraphs of this complaint.

110.     It is well-settled law that under the ADAAA, employers must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A).

111.     The relevant regulations define reasonable accommodations as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with

a disability to perform the essential functions of that position." 29 C.F.R. §
1630.2(o)(1)(ii).

112.      Here, (1) Plaintiff's PTSD and MDD qualifies as a disability within the meaning
of the ADAAA; (2) Plaintiff is a qualified individual able to perform the essential
functions of the front desk position with reasonable accommodation.;  (3) Defendants
were aware of Plaintiff's need for an accommodation due to his disability; (4) providing
Plaintiff with a reasonable accommodation would not have caused an undue burden to
Defendants; and (5) Defendants failed to provide Plaintiff with a reasonable
accommodation.

113.      Here, Defendants effectively interfered with Plaintiff's use of his service animal
to such an extent it deprived him of an accommodation to use his service animal.

114.      Defendants failed to modify or make adjustments to Plaintiff's work environment
to allow use of his service animal without interference.

115.      Defendants failed to engage in the interactive process with Plaintiff.

116.      Therefore, Defendants engaged in an unlawful discriminatory practice by refusing
to provide Plaintiff with a reasonable accommodation.

117.      Because of Defendants' violation of the ADAAA, Plaintiff has suffered damages,
including, but not limited to: past and future lost wages, mental pain and suffering;
humiliation; emotional distress; diminishment of career opportunity; harm to his business
reputation; loss of self-esteem; disruption to his family life; and other harm, pain and
suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages,
including past and future damages for pay, bonuses, personal days, overtime, benefits, and

emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### COUNT IV
### ADAAA – RETALIATION
### 42 U.S.C. §§ 12101 et seq.
**(Not Against Individual Defendants)**

118.     Plaintiff Nathan Iverson repeats and realleges every allegation made in the above paragraphs of this complaint.

119.     The ADAAA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADAAA] or because such individual made a charge . . . under [the ADAAA]." 42 U.S.C. § 12203(a). "Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003).

120.     Unlike a claim for discrimination, accommodation or harassment, an ADAAA retaliation claim does not require that a plaintiff show that he or she has a "disability" within the meaning of the ADAAA. Id.

121.     Activity protected from retaliation under the ADAAA includes not only bringing or participating in formal actions to enforce ADAAA rights, but also informal activity such as requesting an accommodation for a disability. Id.

122.     The Court in Shellenberger held in the ADAAA retaliation context that "temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link. Id.

123.     The Third Circuit has held that the retaliation provision "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

124.     Here, Defendants retaliated against Plaintiff for submitting a complaint of harassment against Defendant Conway and for requesting an accommodation to use his service animal without interference by subjecting Plaintiff to a continued hostile work environment, ultimately leading to Plaintiff's constructive discharge.

125.     The temporal proximity in this case is unusually suggestive of Defendants' retaliatory motive where he was constructively discharged just days after they were on notice of Plaintiff's complaint and failed to investigate or remedy the unlawful conduct.

126.     Because of Defendants' violation of the ADAAA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to his business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants for back pay, attorney's fees, expert witness fees, costs of suit, interest, reinstatement, an adjudication and declaration that Defendants' conduct as set forth herein is in violation of ADAAA, and all other relief deemed equitable and just.

**COUNT V**
**DISCRIMINATION**
**NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1 et seq.**
**(Not Against Individual Defendants)**

127.     Plaintiff Nathan Iverson repeats every allegation made in the above paragraphs of

this complaint.

128.	The NJLAD prohibits employers from discriminating against a person in compensation or in the terms and conditions of employment based on the person's race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, **sexual orientation,** genetic information, **gender,** gender identity, **disability**, nationality, **military status**, or atypical hereditary cellular or blood trait. <u>See</u> N.J.S.A. §§ 10:5-12(a) (emphasis added).

129.	Under the NJLAD, the plaintiff must establish a *prima facie* case of discrimination by showing she (1) is, or is perceived to be, a member of a protected class; (2) is qualified for the position; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. <u>Peper v. Princeton University</u>, 77 N.J. 55, 83 (1978); <u>Williams v. Pemberton Twp. Public Schools</u>, 323 N.J. Super., 490, 502 (App. Div. 1999). In regard to the second element, the plaintiff must merely prove that she "was actually performing the job prior to the termination." <u>Zive v. Stanley Roberts, Inc.</u>, 182 N.J. 436, 454 (2005).

130.	The plaintiff is not required to prove that her protected category was the only motivation for the defendant's actions; rather, the plaintiff must only prove that her protected category played a role in the decision and that it made an actual difference in the defendant's decision. <u>Bergen Commercial Bank v. Sisler</u>, 157 N.J. 188, 207 (1999).

131.	First, Plaintiff is, or is perceived to be, a member of protected classes based on his disability, sex, sexual orientation, and military status.

132.	Second, Plaintiff was qualified for his position.

133.	Third, as outlined above, Plaintiff experienced an adverse employment action in

the form of a hostile work environment that culminated in his constructive discharge.

134.      Finally, Plaintiff was constructively discharged under circumstances giving rise to an inference of discrimination because Plaintiff was subjected to harassing conduct on the basis of his disability, sex, sexual orientation, and military status, and after Plaintiff opposed the discrimination and harassment, Defendants failed to investigate his complaint or take any remedial action. As a result, Defendant Conway continued to engage in a pattern of antagonism and discriminatory animus towards Plaintiff, making Plaintiff's working conditions intolerable.

135.      As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to their business reputation; loss of self-esteem; disruption to their family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## COUNT VI
## HOSTILE WORK ENVIRONMENT
## NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1 et seq.
### (Not Against Individual Defendants)

136.      Plaintiff Nathan Iverson repeats every allegation made in the above paragraphs of this complaint.

137.      The NJLAD also prohibits hostile work environment harassment, which is

harassing conduct in the workplace that would not have occurred but for one of the above-mentioned protected characteristics of the employee that is severe or pervasive enough to make a reasonable person with that protected characteristic believe the conditions of the workplace are altered and the working environment is hostile or abusive. Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993).

138.     An employer is strictly liable for unlawful harassment committed by an employee's supervisor where the harassment culminates in a tangible employment action. Lehman, 132 N.J. at 593.

139.     Here, Defendants' conduct (1) occurred because of Plaintiff's legally protected characteristics (disability, sex, sexual orientation, and military service); and (2) was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

140.     First, the harassing conduct by Defendants directly refers to Plaintiff's disability, sex, sexual orientation, and military service.

141.     Second, a reasonable person subjected to Plaintiff's working environment would have believed Defendants' conduct was severe or pervasive enough to have altered the conditions of employment and render the working environment intimidating, hostile or abusive due to the frequency and offensiveness of Defendants' comments and conduct towards Plaintiff.

142.     As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to

her business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

<u>**COUNT VII**</u>
**REPRISAL**
<u>**NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1 et seq.**</u>
**(Against All Defendants)**

143.    Plaintiff Nathan Iverson repeats every allegation made in the above paragraphs of this complaint.

144.    The NJLAD prohibits "any person to take reprisals against any person because that person has opposed any practices or acts…," such as complaining about, or protesting against, discrimination in the workplace. <u>N.J.S.A.</u> § 10:5-12(d).

145.    The term retaliation can include, but is not limited to, being discharged, demoted, not hired, not promoted or disciplined. In addition, many separate, but relatively minor, instances of behavior directed against the plaintiff may combine to make up a pattern of retaliatory behavior. <u>Nardello v. Twp. of Voorhees</u>, 377 N.J. Super. 428, 433-436 (App. Div. 2005); <u>Green v. Jersey City Bd. of Educ.</u>, 177 N.J. 434, 448 (2003).

146.    The plaintiff is not required to prove that her protected activity was the only motivation for the defendant's actions; rather, the plaintiff must only prove that her protected activity played a role in the decision and that it made an actual difference in the defendant's decision. <u>Donofry v. Autotote Systems, Inc.</u>, 350 N.J. Super. 276, 295 (App.

Div. 2001) ("Plaintiff need not prove that his whistle-blowing activity was the only factor in the decision to fire him."); Kolb v. Burns, 320 N.J. Super. 467, 479 (App. Div. 1999) (burden on plaintiff is to show "retaliatory discrimination was more likely than not a determinative factor in the decision").

147.     First, Plaintiff engaged in protected activity when he reported and opposed the unlawful discrimination and harassment by Defendant Conway.

148.     Second, at the time, or after, the protected conduct took place, Plaintiff was subjected to a pattern of retaliatory behavior, including, but not limited to, Defendant Conway engaging in a pattern of antagonism towards Plaintiff and continuing to create a hostile work environment for Plaintiff.

149.     Third, there was a causal connection between Defendants' retaliation and Plaintiff's protected activity sufficient to show that his complaint or report of workplace discrimination and harassment against Defendant Conway played a role and made an actual difference in the Defendants' pattern of antagonism towards Plaintiff and constructively discharging Plaintiff from his employment.

150.     As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive

damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

**COUNT VII**
**AIDING & ABETTING**
**NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1 et seq.**
**(Against all Defendants)**

151.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

152.    The NJLAD prohibits "*any person, whether an employer or employee or not*, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." NJLAD §10:5-12(e) (emphasis added).

153.    An employee is liable under NJLAD as an aider or abettor if: (1) the individual whom the defendant aids performs a wrongful act that causes an injury; (2) the defendant is generally aware of his/her role as part of the illegal activity at the time he provides the assistance; and (3) the defendant knowingly and substantially assist the principal violation. Tarr v. Caisulli, 181 N.J. 70, 84 (2004).

154.    New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct. DeSantis v. N.J. Transit, 103 F.Supp.3d 583, 591 (D.N.J. 2015).

155.    Here, (1) Defendants aided in each other's wrongful acts of discrimination and retaliation against Plaintiff, establishing a hostile work environment under which Plaintiff had to endure; (2) Defendants were aware of their actions in the discriminatory activity when Plaintiff reported the harassment and discrimination by Defendant Conway, but Defendants failed to take appropriate action, which in turn enabled Defendant Conway to

continue to discriminate and harass Plaintiff; and (3) Defendants substantially assisted each other by maintaining and fostering a discriminatory and hostile work environment for Plaintiff.

156.     As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to their business reputation; loss of self-esteem; disruption to their family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

<u>**COUNT VIII**</u>
**DISCRIMINATION AND RETALIATION**
<u>**UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF**</u>
**1994 ("USERRA"), 38 U.S.C. §4301 et. seq.**
**(Against All Defendants)**

157.     Plaintiff Nathan Iverson incorporates the foregoing paragraphs as if set forth at length herein.

158.     Defendants are employers under USERRA because it is a "person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities." 39 U.S.C. §4303(4).

159.     Plaintiff is an employee under USERRA as he is/was employed by an employer. 39 U.S.C. §4303(3).

160.     Plaintiff is entitled to the benefits of USERRA as he performed duties for the uniformed services including active duty and is not subject to any of the exceptions. 38 U.S.C. §4303(13) and 38 U.S.C. §4304.

161.     Under USERRA, "A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. §4311(a)(emphasis added).

162.     As alleged supra, Plaintiff has been disparately treated and discriminated against by Defendants in relation to similarly situated individuals outside his protected classes, including outside of Plaintiff's veteran status.

163.     As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out of pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, pain and suffering, and other similar damages, all to Plaintiff's great detriment.

164.     Defendants' actions were willful and wanton and thus require the imposition of liquidated damages.

165.     Plaintiff seeks reasonable attorney fees, expert witness fees, and other litigation expenses.

166.     Plaintiff seeks reemployment.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually, jointly and

severally, for compensatory damages, lost wages and benefits, liquidated damages, attorneys' fees, expert witness fees, costs of suit, and all other relief deemed equitable and just.

**COUNT IX**
**DECLARATORY RELIEF ALLEGATIONS**
**(Against All Defendants)**

167.     Plaintiff Nathan Iverson incorporates by reference each and every allegation made in the above paragraphs of this complaint.

168.     A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties.

169.     Plaintiff contends Defendants violated his rights as complained of herein.

170.     Plaintiff is informed and believes that Defendants deny these allegations.

171.     Declaratory relief is therefore necessary and appropriate.

**WHEREFORE,** Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by this complaint.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: */s/Susan Keesler, Esq.* _____
Susan Keesler, Esq.
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Phone: (215) 391-4790
susan@dereksmithlaw.com

Dated: July 5, 2021        *Attorneys for Plaintiff, Nathan Iverson*