**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NATHAN IVERSON,

                Plaintiff,

                v.

KANIA REAL ESTATE HOLDINGS, LLC,
*et al.*,

                Defendants.

Civil Action No. 21-13335 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants Kania Real Estate Holdings, LLC, Stephanie Conway ("Conway"), and Patricia Brecka's ("Brecka," and collectively, "Defendants") Motion to Dismiss Counts IV and VIII of Plaintiff Nathan Iverson's ("Iverson") Complaint. (ECF No. 7.) Iverson opposed (ECF No. 10), and Defendants did not reply. Iverson further consented to dismiss Count VIII of his Complaint. (ECF No. 10.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part Defendants' Motion.

## I.    **BACKGROUND**

This is an employment discrimination case. Although this case concerns several types of alleged discrimination, the Motion focuses only on disability- and veteran-based discrimination.

(*See* Defs.' Moving Br. 3, ECF. No. 8.) The Court accordingly limits this background to those facts only.[1]

A veteran, Iverson suffers from Post-Traumatic Stress Disorder and Major Depressive Disorder stemming from his military service. (Compl. ¶ 32, ECF No. 1.) His symptoms from these disabilities are extensive and include severe depression, night terrors, suicidal thoughts and tendencies, chronic anxiety, and difficulty concentrating. (*Id.* ¶¶ 34-36.) To help cope with these symptoms, Iverson uses a service dog that wears a vest marked "SERVICE DOG." (*Id.* ¶¶ 37-38.) According to the Complaint, "Plaintiff needs his service dog in his presence to reduce or prevent his symptoms." (*Id.* ¶ 50.)

In January 2020, Iverson began working at the front desk of a Comfort Inn in Toms River, New Jersey. (*Id.* ¶¶ 5, 29.) The Complaint suggests that he was hired with his employer's knowledge of his need for a service dog. (*Id.* ¶ 38 ("*At all times*, Defendants were aware of Plaintiff's . . . disability[] and observed Plaintiff utilizing his service animal on a daily basis." (emphasis added).) Nevertheless, Iverson's immediate supervisors (Conway and Brecka) allegedly began harassing him shortly after he started working at Comfort Inn.

Starting with Conway, the Complaint alleges that she told Iverson, "So you're going to bring the dog back in like an asshole" and that he had no "right" to have the service dog by his side. (*Id.* ¶¶ 41, 43.) It also alleges that she told another coworker, "I don't think it's a real service dog." (*Id.* ¶ 44.) Further, the Complaint alleges that Conway once blockaded a door so that Iverson could not access an office with his service dog. (*Id.* ¶ 45 (noting that Conway stated "that if Plaintiff wanted access to the front office, he would have to put his service dog out in the car").) Conway

---

[1] The Court accepts all well-pleaded factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

also told Iverson that she would not come into work unless he kept his service dog outside and that the service dog would have to leave the Comfort Inn fifteen minutes before the end of Iverson's shift. (*Id.* ¶¶ 47-48.)

No doubt fed up with Conway's conduct, Iverson complained to Brecka. (*Id.* ¶ 52.) But he found no recourse there. Brecka told Iverson to stop coming into work altogether. (*Id.* ¶ 53.) She further commented that his service dog was "creating more problems than it's worth." (*Id.* ¶ 54.) The Complaint further alleges that Brecka never investigated Iverson's claims of disability-based discrimination. (*Id.* ¶ 56.) Unsurprisingly then, the conduct continued. Following Iverson's complaint, Conway would "glare" at him and posted a copy of his complaint to an office corkboard, complaining, "Look at this shit, look at this shit." (*Id.* ¶¶ 57-58; *see also id.* ¶ 60 ("Defendant Brecka failed to do anything to correct Defendant Conway's conduct above.").) Eventually, Iverson resigned from the Comfort Inn after just three months of working there and less than three weeks after complaining to Brecka. (*Id.* ¶¶ 29, 65.)

In July 2020, without counsel, Iverson filed a complaint with the Equal Employment Opportunity Commission (the "Commission"). (*Id.* ¶ 21.) In that complaint (the "EEOC Complaint"), Iverson alleged as follows:

> I began employment for Respondent in January of 2020, as a Hotel Night Auditor. I utilized a service animal for the duration of my time working for Respondent because of a physical and/or mental impairment that Respondent was aware of. My performance as a Hotel Night Auditor was satisfactory. Starting on April 10th, 2020, I was subject to harassment by a co-worker, Stephanie [Conway], because of my use of a service animal. I made my manager, Patricia Brecka, aware of the harassment, but there was no action taken. In fact, on April 18th, 2020, Patricia only perpetuated the harassment by stating, ["]the simple answer is don't come in once you have left just leave me a message to fill in your punch for the day. This [my service animal] is creating more problems than it's worth.["] Eventually, I was forced to quit from my position with Respondent on April 29th, 2020, because of the treatment I was subject to.

(Defs.' Moving Br. Ex. A (EEOC Compl.) 2, ECF No. 8-1 (third alteration in original).)[2] The EEOC Complaint also prompted Iverson to check boxes for which type(s) of discrimination he alleged. (*Id.* at 1.) Iverson checked the "Disability" box but did not check the "Retaliation" box. (*Id.*) After reviewing the EEOC Complaint, the Commission authorized Iverson's suit against Defendants. (Compl. ¶ 24.) This matter followed.

Defendants now move to partially dismiss Iverson's Complaint. They argue that the Complaint insufficiently alleges Counts IV and VIII, which are violations under the Americans with Disabilities Act ("ADA") under a retaliation theory and violations under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). (*See generally* Compl.) Principally, Defendants argue that the retaliation theory falls outside the scope of the EEOC Complaint and that therefore Iverson failed to administratively exhaust his remedies before suing Defendants. (*See* Defs.' Moving Br. 4-7.) Iverson counters that although he did not check the "Retaliation" box, the EEOC Complaint's allegations put Defendants on notice of a retaliation theory. (*See* Pl.'s Opp'n Br. 3-8, ECF No. 10.) He further moves to voluntarily dismiss his USERRA claim. (*Id.* at 1 ("Plaintiff consents to dismissal, without prejudice, his claim pursuant

---

[2] Defendants attached a copy of the EEOC Complaint to their moving brief. Although a court should not consider material outside the pleadings on a motion to dismiss, it may do so when that material is "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Iverson's Complaint explicitly references the EEOC Complaint, and the EEOC Complaint is integral to the Complaint (as Iverson could not have sued Defendants without the EEOC Complaint). Neither side disputes the EEOC Complaint's authenticity. The Court therefore considers the EEOC Complaint in its decision not for the truth of the allegations therein but rather for the "procedural and legal effect on the current proceeding." *Powell v. Verizon*, No. 19-8418, 2019 WL 4597575, at *4 (D.N.J. Sept. 20, 2019); *see also Grant v. U.S. Post Off.*, No. 19-9107, 2021 WL 5076415, at *2 n.2 (D.N.J. Nov. 1, 2021) (considering EEOC complaint); *Mastrella v. DeJoy*, No. 20-1135, 2021 WL 5396077, at *2 n.3 (M.D. Pa. Nov. 18, 2021) (same).

to the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (Count VIII).").)[3]

## II.   <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[3] The Court accordingly grants Defendants' Motion regarding the USERRA claim (Count VIII).

III.    **DISCUSSION**

The Court need only decide whether Iverson's ADA claim premised on a retaliation theory falls under the scope of the EEOC Complaint's factual allegations. "The relevant test . . . is a two-pronged inquiry into whether the acts alleged in the subsequent . . . suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (second alteration in original) (internal quotation marks omitted) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). The Third Circuit cautions that district courts must "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed." *Id.* (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997)). Courts also, however, liberally construe prior EEOC complaints because those "charges are most often drafted by one who is not well versed in the art of legal description." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978).

The Court has little trouble concluding that Iverson raised his retaliation theory in his EEOC Complaint. To establish a plausible claim for retaliation under the ADA, Iverson must allege three elements: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). To be clear, the Court is not saying that Iverson needed to plead these elements in his EEOC Complaint to administratively exhaust his retaliation theory; he did not. Rather, these elements serve as a guidepost to assess whether the Commission would have thought to investigate a retaliation theory. *See Canete v. Barnabas Health Sys.*, No. 12-7222, 2013 WL 5305236, at *5 (D.N.J. Sept. 18, 2013) ("[T]he permitted scope of the lawsuit is any claim that

should have been included in a reasonable investigation conducted by the EEOC, based upon the information contained in the Charge." (quoting *Carr v. New Jersey*, No. 09-913, 2010 WL 2539782, at *4 (D.N.J. June 17, 2010))).

Iverson's EEOC Complaint raised a plausible retaliation theory that would cause the Commission to reasonably investigate that theory. The EEOC Complaint unambiguously states that Iverson complained to his supervisor, Brecka, about Conway's comments. Employees engage in protected activity when they complain about conduct that violates the ADA. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791-92 (3d Cir. 2016).[4] The EEOC Complaint also asserts that Iverson "was forced to quit" after complaining to Brecka and after Brecka made unsavory comments about his service dog. (EEOC Compl. 2.) It further alleges that Brecka told Iverson to stop coming into work after he raised complaints of discrimination. (*Id.*) At this early stage, those allegations are more than enough to assert constructive discharge. *See DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 78 (3d Cir. 2018) (defining constructive discharge for retaliation under federal law as when "the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign").

For good measure, the EEOC Complaint also raises a plausible inference of causation between Iverson's complaint to Brecka and his subsequent resignation. That's so because it alleges that both events happened within roughly ten days of each other. Ten days would likely cause the Commission to reasonably investigate whether something was amiss at the Comfort Inn. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (noting that ten days was unduly suggestive evidence of causation); *Carey v. Nat'l Event Servs.*, 2015 WL 667519, at *7

---

[4] The Court does not now decide whether using a service animal is a protected activity under the ADA. The parties do not brief that argument, so the Court assumes that using a service animal in the workplace is a protected activity.

(E.D. Pa. Feb. 13, 2015) ("[T]he Third Circuit has not found any period longer than three weeks so 'unduly suggestive' of retaliatory animus . . . to establish causation without other evidence." (citations omitted)); *Johnson v. Waterlogic East, LLC*, No. 16-672, 2017 WL 3314004, at *3 (D. Del. Aug. 3, 2017) ("While the temporal proximity of ten days may in the end not be enough by itself to infer retaliatory motive, it is a good start.").

Defendants' contrary arguments boil down to the position that Iverson did not say enough in his EEOC Complaint. Each of these parries fails. Defendants first make much about Iverson's failure to check the "Retaliation" box in the EEOC Complaint. Black-letter law dooms this argument. *See Carr*, 2010 WL 2539782, at *4 ("The claims that may be included in a Title VII plaintiff's civil lawsuit are not strictly limited to those checked off in the box section on the front page of the Charge, nor even to the specific claims that the EEOC investigated pursuant to the Charge." (citing *Hicks*, 572 F.2d at 963, 966)). Defendants next assert that Iverson did not suffer an adverse employment action because he "simply quit of his volition." (Defs.' Moving Br. 6.) But that is not what the EEOC Complaint says. (EEOC Compl. 2 ("Eventually, *I was forced to quit from my position* with Respondent on April 29th, 2020, *because of the treatment I was subject to.*" (emphases added).) Black-letter law again confirms that the ADA countenances constructive discharges as adverse employment actions. *See, e.g.*, *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502-03 (3d Cir. 2010).

Finally, Defendants point to a "factually similar matter" to guide the Court, but closer inspection reveals that that case offers Defendants no refuge. (Defs.' Moving Br. 7 (citing *Simko v. U.S. Steel Corp.*, No. 19-765, 2019 WL 6828421 (W.D. Pa. Dec. 13, 2019). That is because it is not factually similar. In *Simko*, the EEOC complaint was "based on a different kind of discrimination than [the] original charge" and was "based on different facts." *Simko*, 2019 WL

6828421, at *7-8. Thus, the *Simko* Court concluded that nothing in the original charge could have put the EEOC on notice of the employee's later retaliation claim." *Id.* at *8. In stark contrast, the EEOC Complaint and the Complaint here assert the same type of discrimination, the same at-issue individuals, the same timeline, and the same underlying conduct. The facts here are nothing like *Simko* where the plaintiff attempted to bootstrap a claim "based on entirely different facts" to the later-filed complaint.

## IV.    **CONCLUSION**

The Court grants in-part and denies in-part Defendants' Motion to Dismiss. It denies the motion regarding the Complaint's ADA retaliation claim because that claim falls well within the scope of Iverson's EEOC Complaint. It grants the motion regarding the Complaint's USERRA claim as Iverson consents to dismissing that claim. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE